2026 IL App (2d) 240636-U
No. 2-24-0636
Order filed February 9, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,<br><br>v. CALVIN D. JACKSON, Defendant-Appellant. | Appeal from the Circuit Court of McHenry County.<br><br>Honorable Justin M. Hansen, Judge, Presiding.<br>No. 24-CF-115 |

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) We strike, for violations of briefing requirements, the parts of defendant's brief and appendix related to his argument that he and his codefendant received improperly disparate sentences; in any event, the argument lacks merit because no evidence supports defendant's implication that the disparity was due to race. (2) The trial court's reliance in aggravation on the serious harm defendant threatened when he robbed the victim while wielding a knife was not an improper double enhancement, nor was defendant's sentence otherwise an abuse of discretion.

¶ 2    Following a jury trial in the circuit court of McHenry County, defendant, Calvin D. Jackson, was convicted of armed robbery (720 ILCS 5/18-2(a)(1) (West 2022)), attempted armed robbery (*id.* §§ 8-4(a), 18-2(a)(1)), and home invasion (*id.* § 19-6(a)(1)).  The trial court imposed concurrent prison terms for each of the following: 17 years for the armed robbery and home invasion convictions, and 15 years for attempted armed robbery.  Defendant argues that his

sentences must be reduced because the trial court exaggerated the threat of harm posed by his conduct and because of a disparity between his sentence and that of a codefendant. We affirm.

¶ 3                            I. BACKGROUND

¶ 4     Evidence at trial established that, in August 2023, defendant and Carley West were in a relationship and were living together. Using the name "Kylani," West became acquainted with J.F., a 74-year-old widower, through a dating website called " 'What's Your Price.' " West requested $50 as an "incentive" to go on a date with J.F. They had their first date on August 8, 2023, at which point J.F. paid West (who was still known to J.F. only as "Kylani") $50 in cash. They kissed and engaged in sexual activity. They subsequently texted each other, and J.F. sent West money through Venmo. They ultimately arranged to meet again at J.F.'s home on August 26, 2023.

¶ 5     On that date, West arrived in a white vehicle. After West entered the house, they went to the sunroom. West asked if her " 'friend' " could use the bathroom, at which point J.F. saw defendant standing in the sunroom's doorway. (Although J.F. was unable to identify the intruder, his identity is not in dispute in this appeal.) Defendant was wearing a "COVID mask" and holding a knife in his right hand. The knife appeared to be a "butcher knife" with a seven- or eight-inch blade. Defendant was holding the knife by his side. Defendant demanded J.F.'s phone. When J.F. hesitated, defendant repeated the demand "[v]ery forcefully." Defendant did not raise the knife, but he was "kind of waving it a little bit." J.F. gave the phone to defendant. J.F. testified that he was "scared" and had "no idea what [defendant] might have chosen to do."

¶ 6     Defendant handed the phone to West and demanded that J.F. reveal the passcode. J.F. complied. During the next 30 to 45 minutes, J.F. and West attempted to transfer money to West's Venmo account. Defendant "stayed across [the table] from" J.F., "periodically waving the knife."

Defendant was "[n]ever really pointing [the knife] directly at [J.F.], but making sure—it appeared like [defendant] was making sure [J.F.] knew it was there." When the transfer of funds was declined, defendant became upset. When defendant went to the bathroom, J.F. ran out of the house. He saw the white vehicle drive away, and he memorized its license plate number. The vehicle was registered to West. When J.F. returned home, his phone was missing. It was subsequently found in a nearby neighborhood. Defendant's fingerprint was discovered on the garage door to J.F.'s home.

¶ 7    Defendant's sentencing hearing was held on September 18, 2024. The presentence investigation report (PSI) revealed that defendant was born on January 10, 1996. His only juvenile adjudications were of domestic battery and disorderly conduct, which he committed when he was 14. He was sentenced to three months' detention in the Illinois Youth Center. His adult criminal history included convictions of domestic battery and aggravated vehicular hijacking. For the latter offense, he was sentenced to a seven-year prison term. He was released from prison in 2021, and his sentence was discharged in February 2023.

¶ 8    In imposing sentence, the trial court stated that it was "being careful to not inadvertently doubly enhance the [d]efendant's sentence." Among the factors in aggravation, the court considered defendant's criminal history, notably his conviction of aggravated vehicular hijacking, his sentence for which was discharged only about six months before the current offense. The court also found that the threat of harm was an aggravating factor, reasoning as follows:

> "The victim testified that [defendant] entered his house with a large knife. He described that knife specifically, including its length. He described that it looked like a butcher knife ***.

It is true that there is no evidence that [defendant] ever put the knife point to the victim in this particular case, but the victim did testify that throughout that 30 to 45 minutes *** [defendant] and his [c]o-[d]efendant terrorized him in his home, that he wielded the knife, waived [*sic*] it while pointing it down, and became agitated while the financial transfers did not work. That is a threat of serious harm."

The court considered defendant's age as a factor in mitigation, explaining: "although he has a serious criminal history with high level offenses, there are not many offenses that have occurred since [defendant] became an adult until now although he spent a fair amount of that time in custody or in prison or on [mandatory supervised release]." The court sentenced defendant as noted (*supra* ¶ 2). It declined to impose an extended-term sentence, although it had discretion to do so based on defendant's criminal history and the victim's age. See 730 ILCS 5/5-5-3.2(b)(1), (3)(ii) (West 2022).

¶ 9    Defendant unsuccessfully moved for reconsideration of his sentence, and this appeal followed.

¶ 10                          II. ANALYSIS

¶ 11    Defendant argues on appeal that, in sentencing him, the trial court exaggerated the harm threatened by defendant's conduct. Additionally, defendant argues that his sentence must be reduced because it is far more severe than the sentence West received. He intimates that the disparity is because he is Black and West is White.

¶ 12    We note that the State has moved to strike portions of defendant's brief and appendix pertaining to the latter argument, which is based entirely on facts outside the record on appeal. We ordered the motion taken with the case, and we now grant it. In his statement of facts, defendant cites an article from an online publication indicating that West entered a negotiated guilty plea to

- 4 -

a charge of felony theft. The citation violates Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), which provides, in pertinent part, that the statement of facts "shall contain the facts necessary to an understanding of the case, *** *with appropriate reference to the pages of the record on appeal*." (Emphasis added.) Defendant also improperly included a copy of West's sentencing order (which is not part of the record on appeal) in the appendix to his brief. It is well established that "[i]f pleadings, exhibits, or other materials are not in the record, they may not be placed before a reviewing court in an appendix." *Waukegan Hospital Group, LLC v. Stretch's Sports Bar & Grill Corp.*, 2024 IL 129277, ¶ 20. Accordingly, the noncompliant portions of defendant's statement of facts and appendix are stricken. Moreover, even if these materials were properly before us, they would hardly be grounds for concluding that the sentencing disparity was due to race. First, as defendant acknowledges, it is well established that "[a] sentence imposed on a codefendant who pleaded guilty as part of a plea agreement does not provide a valid basis of comparison to a sentence entered after a trial." *People v. Caballero*, 179 Ill. 2d 205, 217 (1997). Defendant nonetheless feels compelled to point out that defendant is Black and West is White, implying that race must have factored into the disparity. Leaving aside that West entered a guilty plea, any number of other factors could have affected the State's decision as to the terms of the plea agreement. The record sheds no light on West's criminal history or possible defense she might have interposed had the matter proceeded to trial. Accordingly, the implied accusation that race played a role in the sentencing disparity is baseless as well as offensive. We therefore grant the State's motion to strike the portion of defendant's brief advancing that argument.

¶ 13 Turning to the question of whether, in imposing sentence, the trial court overestimated the harm that defendant's conduct threatened, we begin with a summary of the basic principles governing sentencing for criminal offenses. Our state constitution provides, "All penalties shall

be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. \*\*\*." Ill. Const. 1970, art. I, § 11. "[T]he most important factor in fashioning the appropriate sentence is the seriousness of the offense." *People v. Campos*, 2024 IL App (2d) 230056, ¶ 60. Section 5-5-3.2 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2 (West 2022)) sets forth various aggravating factors to be considered in determining, *inter alia*, the severity of the sentence to be imposed on an offender. One aggravating factor is that "the defendant's conduct caused or threatened serious harm[.]" *Id.* § 5-5-3.2(a)(1). Section 5-5-3.1 of the Code (*id.* § 5-5-3.1) lists factors in mitigation. The trial court may also consider nonstatutory factors in aggravation and mitigation. See *People v. Allen*, 119 Ill. App. 3d 845, 846 (1983) ("A hearing in aggravation and mitigation is an inquiry into pertinent facts and circumstances which will enable the trial judge to exercise his discretion in determining the length of sentence," and the court "may search anywhere within reasonable bounds for other facts tending to aggravate or mitigate the sentence.").

¶ 14　As we have explained:

　　"We will not disturb a sentence falling within the statutory range for an offense unless the trial court has abused its discretion. [Citation.] Where the sentence falls within the statutory range, an abuse of discretion occurs where the court has imposed a sentence that greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense [citation], or where the sentence does not reflect adequate consideration of relevant factors in mitigation or the defendant's rehabilitative potential [citation]. Nevertheless, so long as it does not ignore relevant factors in mitigation or consider improper factors in aggravation, the court possesses wide latitude in imposing a sentence. [Citation.] We also presume that the court has considered all relevant evidence

in mitigation, absent some affirmative indication to the contrary beyond the sentence itself. [Citation.] The existence of mitigating factors neither requires the imposition of the minimum sentence nor precludes the imposition of the maximum sentence; rather, the court must balance all relevant factors and reach a reasoned decision about the appropriate punishment in each case." *Campos*, 2024 IL App (2d) 230056, ¶ 54.

¶ 15    Defendant suggests that the trial court so repeatedly emphasized the threat-of-serious-harm aggravating factor that the court "felt the need" to stress that its reliance on that factor was not an improper double enhancement. Despite defendant's implied skepticism toward the court's disclaimer, we see no improper double enhancement—that is, in finding that defendant threatened serious harm, the court did not rely on a factor inherent in any of the offenses. See *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 23. To avoid improper double enhancement, "the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67. Here, for all three offenses, defendant's conduct was more serious than the minimum conduct necessary to commit the offense. Home invasion may be committed in multiple ways (see 720 ILCS 5/19-6 (West 2022)); threat of serious harm is not an inherent element. The home invasion charge against defendant alleged that he entered J.F.'s home "while armed with a dangerous weapon, to wit: a large knife, *** [and] use[d] *** force or *** threaten[ed] the imminent use of force." See *id.* § 19-6(a)(1). A person commits robbery when "he or she knowingly takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." *Id.* § 18-1(a). A person who commits robbery and "carries on or about his or her person or is otherwise armed with a dangerous weapon" is guilty of armed robbery. *Id.* § 18-2(a)(1). None of the three offenses expressly requires a threat of serious harm. Indeed, there is nothing in the definition of armed

robbery or home invasion (as charged) that requires the victim to even be aware that the offender is armed. While an armed robber's or home invader's access to a dangerous weapon presents an inherent threat of serious harm, the relevant comparison, for sentencing purposes, is between (1) the defendant's conduct and (2) the minimum conduct necessary to commit the offenses. See *Hibbler*, 2019 IL App (4th) 160897, ¶ 67. Defendant's conduct went well beyond the minimum to commit armed robbery or home invasion. Defendant did not merely possess a weapon; he openly displayed it to the victim over the course of 30 to 45 minutes. In doing so, defendant conveyed a clear message to the victim—failure to comply with defendant's demands to transfer money would result in defendant using the knife to harm the victim.

¶ 16    In arguing that the trial court erred by considering the threat of serious harm, defendant characterizes his conduct as "passively us[ing] the knife to keep J.F. occupied" during the attempt to steal his money. This language trivializes the severity of defendant's behavior and contorts the meaning of "passivity." Conduct qualifies as "passive" when it "does not involve exerting will on the external world." *Passive conduct*, Black's Law Dictionary (12th ed. 2024). Surely, from J.F.'s position within the "external world," defendant, by demanding money while displaying a knife, was clearly exerting his will.

¶ 17    Although defendant stresses that he did not point the knife directly at J.F. and never came near him with it, those circumstances do not negate the serious threat of harm arising from defendant's display of the knife. Armed robbery and home invasion are Class X felonies (720 ILCS 5/18-2(b), 19-6(c) (West 2022)), each punishable by a prison term of not less than 6 and not more than 30 years (730 ILCS 5/5-4.5-25(a) (West 2022)). Attempted armed robbery is a Class 1 felony (720 ILCS 5/8-4(c)(2) (West 2022)), punishable by a prison term of 4 to 15 years (730 ILCS 5/5-4.5-30(a) (West 2022)). The trial court imposed sentences within the statutory range for all

three offenses and refrained from imposing extended-term sentences. For home invasion and armed robbery, the court imposed sentences below the midpoint of the sentencing range. We cannot say that the court's reliance on the threat of serious harm as a factor in aggravation was improper or that the court otherwise abused its discretion in imposing sentence.

¶ 18                                    III. CONCLUSION

¶ 19     For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 20     Affirmed.